IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,    CASE NO.: 8:15-CR-409-T-33JSS

V.

GREGORY ORTIZ,
     Defendant.
_____/

## DEFENDANT, GREGORY ORTIZ'S, SENTENCING MEMORANDUM

**COMES NOW**, the Defendant, GREGORY ORTIZ, by and through his undersigned attorney, and files this Sentencing Memorandum. On November 30, 2015, Mr. Ortiz plead guilty to one count of Conspiracy to Possess with Intent to Distribute 100 Kilograms or More of Marijuana while aboard a Vessel Subject to the Jurisdiction of the United States, which is a Class B felony. The Presentence Investigation Report (PSR) recommends a Guidelines sentence of 60 months because of the minimum mandatory sentence of 60 months. Mr. Ortiz's Criminal History Category is I. For the reasons stated below, Mr. Ortiz is respectfully requesting that this Court depart or grant a variance and impose a sentence below the advisory Guideline range.

### FACTS RELATING TO CHARGED CRIMINAL OFFENSE

    1. On September 24, 2015, a federal grand jury in the Middle District of Florida, Tampa Division, returned a two-count Indictment naming Anthony Morais, Edwin Hernandez, Gregory Ortiz, and Mario Castillo as the defendants.

    2. Count One charges that beginning on an unknown date and continuing until on or about September 19, 2015, the defendants conspired to possess with intent to distribute 100 kilograms or more of marijuana while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and 21 U.S.C. § 960(b)(2)(G).

    3. Count Two charges that beginning on an unknown date and continuing until on or about September 19, 2015, the defendants, while aiding and abetting each other, possessed with

intent to distribute 100 kilograms or more of marijuana while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), and 70506(a) and (b), Title 18, United States Code, Section 2, and 21 U.S.C. § 960(b)(2)(G). (Doc. 1).

    4. On November 30, 2015, Mr. Ortiz pled guilty pursuant to a plea agreement with the government. His sentencing hearing is set for February 18, 2016 at 9:00 a.m.

    5. The PSR in this case calculates Mr. Ortiz's total offense level as 23 with a criminal history of 1. (PSR at Para. 29). Accordingly, Mr. Ortiz is facing a sentencing range of 46 months to 57 months. However, the statutorily required minimum sentence of five years is greater than the maximum of the applicable guideline range; therefore, the guideline term of imprisonment is 60 months. USSG §5G1.1(b). (PSR at Para. 56, 57).

    6. Mr. Ortiz's sentence should be reduced, notwithstanding the mandatory statutory minimum, based on Mr. Ortiz not having more than 1 criminal history point; (2) Mr. Ortiz did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) Mr. Ortiz was not an organizer, leader, manager, or supervisor of others in the offense and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and (5) Mr. Ortiz truthfully provided to the Government all information and evidence the he had concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that Mr. Ortiz has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that Mr. Ortiz has complied with this requirement. 18 U.S.C. § 3553(f)(1)-(5).

## DEFENDANT'S BACKGROUND

Mr. Ortiz was born on December 23, 1988, in Bluefields, Nicaragua. He has never known his father, not even his name other than Hodgson. The defendant's mother, Juana Ortiz, is 47 years old, and resides in Bluefields, Nicaragua where she works picking fruits and vegetables. Mr. Ortiz is very close to his family and has three half-siblings. Mr. Ortiz has lived in Bluefields his entire life, and had a very impoverished upbringing. His childhood home did not have

running water or electricity; Mr. Ortiz and his family continue to live without those basic needs. Although Mr. Ortiz has never met his father his mother has been involved in a relationship with Leonardo Benjamin since Mr. Ortiz was very young. Mr. Benjamin is employed as a farmer. All of Mr. Ortiz's half-siblings are farmers and live in Bluefields, Nicaragua.

Although Mr. Ortiz has never been legally married he has been in a common law husband-wife relationship with Lady Andrea McCrea, age 24, for eight years. They live together and have three young children. Prior to his arrest Mr. Ortiz lived with his family and his parents in a small two bedroom, one bathroom, wooden home in Barrio Punta Fria in Bluefields, Nicaragua. Mr. Ortiz plans to return to his family in Bluefields, Nicaragua once he is released from custody and deported back to Nicaragua.

Mr. Ortiz has a six grade education with average reading and writing skills. He understands a little English. Mr. Ortiz has worked as a farmer and fisherman. However, his primary occupation is as a fisherman. Mr. Ortiz fished daily from the shore and on a good week could earn $120. Mr. Ortiz welcomes the opportunity to learn more English and a trade, especially mechanics, if it is available to him while in custody.

## LEGAL ARGUMENT

### I. The Guidelines and Not the Minimum Mandatory sentence is applicable to Mr. Ortiz's case.

A court may impose a sentence below the mandatory minimum if the defendant qualifies for the safety valve (18 U.S.C. § 3553(0), or the government files a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. United States v. Castaing-Sosa, 530 F.3d 1358, 1360 (11th Cir. 2008). If the Government does not file a substantial assistance motion, the defendant, to receive the safety valve, is required to prove five factors for relief by a preponderance of the evidence. United States v. Poyato, 454 F.3d 1295 (11th Cir. 2006). The five factors under Section 3553(f) (the safety valve), provides that a Court may impose a sentence below the statutory minimum if it finds:

> 1) the defendant does not have more than one criminal history point, as determined under the sentencing guidelines;

2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

3) the offense did not result in death or serious bodily injury to any person;

4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement. 18 U.S.C. § 3553(f).

In this case, Mr. Ortiz has a criminal history of I point as determined under the sentencing guidelines. Further, this offense did not result in death or serious bodily injury to any person. Mr. Ortiz was not an organizer, leader, manager or supervisor of this conspiracy. Mr. Ortiz has provided truthful evidence to the government before the time of his sentencing.

## II. Analysis Under the Advisory Sentencing Guidelines

The PSR reflects a Total Offense Level of 23 and Criminal History Category I with a corresponding sentencing range 46 months to 57 months, however, the statutorily authorized minimum sentence of five years is greater than the minimum of the guideline range, therefore the guideline range is 60 months, if the safety valve does not apply.

## III. The Sentencing Guidelines Cannot Restrict a Court's Discretion

A district court's discretion is no longer limited by the guidelines since its matrix is now considered merely advisory. United States v. Booker, 543 U.S. 220, 245-67. Indeed, it "has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall v. United States, 552 U.S. 38, 53 (2007) (quoting Koon v. United States, 518 U.S. 81 (1996)). It is abundantly clear that the district courts today enjoy "sizeable discretion" in sentencing. United

States v. Gall, 552 U.S. at 56; Untied States v. Pugh, 515 F3d 1189-90 (nth Cir. 2008). Utilization of the Guidelines in a manner other than as an advisory tool violates the Sixth Amendment rights of a defendant. Any contention that the Guidelines enjoy a presumption of reasonableness has been rejected. See Rita v. United States, 551 U.S. 338, 351 (2007).

A district court now has the ability and authority to impose a sentence, merely "because the case warrants a different sentence...," regardless of the range determined by a Guidelines calculation. Id. The only requirement is that a court consider the Guidelines as a factor along with the other factors delineated in § 3553(a) before reaching its final decision. Kimbrough v. United States, 522 U.S. 85 (2007). No extraordinary circumstances need be present or any mathematical formula be employed before a below Guidelines sentence may be imposed. Gall, 552 U.S. at 47-58. Judge Tjoflat, in United States v. Glover, 431 F.3d 744, 75253 (11"' Cir. 2005), recognized that in some cases, the Guidelines may have little persuasive effect in light of the § 3553(a) factors:

Although "judges must still consider the sentence range contained in the Guidelines, …that range is now nothing more than a suggestion that may or may not be persuasive...when weighed against the numerous considerations listed in [Section 3553(a)].'United Stales v. Glover, 431 F.3d 744, 752-53 (11th Cir. 2005). Consistent with this, the Eleventh Circuit recently stated, "that there is a range of choices for the district court, and so long as its decision does not amount to a clear error of judgment we will not reverse even if we would have gone the other way had the choice been ours to make." United States v. Jordan, F.3d 1239, 1249 (11th Cir. 2009). A sentencing court, then, has not only the power, but also the responsibility, to mold an appropriate sentence-taking each and every defendant into account as an individual. The sentencing decisions made by the Court trump the sentencing guidelines.

**IV. The § 3553 Factors Applied to Mr. Ortiz's Case**

The goal of sentencing is to impose the least onerous sentence consistent with the purposes of sentencing, which Congress has identified as punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a) (providing that a court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing). To

achieve these ends, § 3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of the specific case through the lens of seven factors, including:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) The need for the sentence imposed— a. To reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; b. To afford adequate deterrence to criminal conduct; c. To protect the public from further crimes of the defendant; and d. To provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) The kinds of sentences available;
>
> (4) The kinds of sentence and the sentencing range established...;
>
> (5) Any pertinent [Sentencing Commission} policy statement...;
>
> (6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) The need to provide restitution to any victims of the offense. Against this backdrop of factors, a variance based on the § 3553(a) factors is warranted in Mr. Ortiz's case.

**1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

Although Mr. Ortiz's crime is serious, there are many mitigating factors attendant to these particular circumstances. Mr. Ortiz has been a law-abiding, productive citizen prior the time of this offense, and he has assisted the government with its investigation and potential prosecution of multiple individuals. The history and characteristics of Mr. Ortiz also establish the appropriateness of a downward variance. He is in a long-term committed relationship and he provides support to his common-law wife and their children. A defendant's need to financially provide for loved ones was recognized as a grounds for the departure pursuant to U.S.S.G. § 5H1.6 by U.S. District Judge Thompson in United States v. Rose, 722 F. Supp. 2d 1286, 1290 (M.D. Ala. 2010). In Rose, a distribution case, the district court determined the defendant was entitled to a three-level downward departure based on the defendant's role as a financial supporter of his girlfriend and her child. 722 F. Supp. 2d at 1290. After finding the defendant was the primary source of income for his girlfriend and her disabled son, the court determined

"[a] guideline sentence would have 'caused a substantial, direct, and specific loss of essential caretaking' to [the defendant's] family. Id. (citing § 5H1.6 cent. N. 1(B)(i); see also United States v. Kloda, 133 F. Supp. 2d 345 (S.D.N.Y. 2001) (defendant convicted of a tax fraud of almost 5400,000.00, received a downward departure to six months in jail due to family responsibilities); United States v. Ingram, 816 F. Supp. 26, 36 (D.D.C. 1993) (district court found a departure was warranted, where, among other things, the defendant was the sole support and source of guidance for his sons and sole financial support for his mother who lived with him).

    Related to this, is the ability of this court to downwardly depart or vary from the Guidelines due to the combination of family circumstances, lack of criminal history, and acceptance of responsibility affecting the defendant. In United States v. Tomko, 562 F.3d 558, 563, 574 (3d Cir. 2009), the Third Circuit affirmed the defendant's sentence for tax evasion that included probation and home detention in light of the defendant's lack for significant criminal history, acceptance of responsibility, and the potential loss of defendant's employee's jobs, among other factors. Id.; see also United States v. Gayle, Case No. 09-CR-358 (E.D.N.Y 2010) (an attorney convicted of mortgage fraud and scoring a Zone D sentence of 37-46 months imprisonment, was sentenced to five years' probation with the district court noting that the defendant was the primary source of support to her young child, her strong family connections, and that "had she had the proper start as an attorney" she probably would have been successful and not involved in the crime charged.)

    Like the defendants in the aforementioned cases, Mr. Ortiz plays a very significant role in the daily activities and finances of his common-law wife and their children. They are very poor and she relies on his financial and parental support to provide for herself and her children. Until his arrest in this case, Mr. Ortiz demonstrated a good work ethic and dedication to his family. His involvement in this conspiracy was outside of his character and only came about because of the extreme poverty he and his family were living in. Until his arrest, he led a clean life, working hard and providing for his family. Ms. McCrea and her children are immensely dependent upon Mr. Ortiz to help maintain their household. Mr. Ortiz's absence will undoubtedly have a substantial impact on Mr. Ortiz and his family.

This court should consider Mr. Ortiz's remorse as expressed through his immediate cooperation with authorities, quick plea of guilty, willingness to testify at trial against his codefendant's, and extraordinary acceptance of responsibility. In United States v. Howe, 543 F.3d 128, 135 (3d Cir. 2008), a wire fraud case, a sentence of probation with three months house arrest was imposed despite an advisory Zone D Guideline range of 18-24 month imprisonment. In affirming, the appellate court recognized the unique position of the district court to assess genuine remorse as part of the whole picture of a defendant. This unique role was noted by the Supreme Court in Gall: "the sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the [Sentencing] Commission of the appeals court." Gall, 552 U.S. at 597-98 (quoting Rita, 551 U.S. at 357-58). The dedication Mr. Ortiz has put forth in relation to his family and substantial assistance are relevant and compelling. Furthermore, Mr. Ortiz's network of familial support is a good indicator of Mr. Ortiz's future prospects. A sentence imposed pursuant to a departure of variance will permit Mr. Ortiz to continue to lead a productive and useful life and continue to rehabilitate himself. See United States v. Nalley. No. 10-CF-224, 2010 WL 3909468, at *2 (E.D.N.Y. Sept. 29, 2010) (imposing sentence of five months' probation where defendant pled guilty to conspiracy to distribute crack cocaine, for which he faced a mandatory minimum and Guidelines range of imprisonment between 70 and 87 months where defendant had "demonstrated a concerted effort to reform" by obtaining gainful employment).

**2. a-b. The Need for the Sentence Imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct**

As noted above, the government's filing of a motion pursuant to U.S.S.G. § 5K1.1, permits the Court to depart below the Guidelines and below the applicable Guideline range. See Section 1, supra. Distribution of drugs is a serious offense, which deserves just punishment. However, a review of the application of the factors listed in § 5K1.1 to this case demonstrated the propriety of a sentence far below the Guidelines. 1 See also United States v. Smith. No. 08-CR-545, 2009 WL 971682. At *2 (E.D.N.Y. Apr. 2, 2009) (defendant facing five year statutory minimum and Guidelines range of 37-46 months sentenced to a year and a day due to his

intelligent and thoughtful nature, taking responsibility for his actions, having a loving and supportive family, his intent to pursue rehabilitation, and his agreement to forfeit drug proceeds); Untied States v. Remy. No. 07-CR-5, 2008 WL 5458951, at *2 (E.D.N.Y. Dec. 24, 2008) (defendant facing mandatory minimum sentence and a Guideline range of 30-37 months sentenced to a year and a day based on his work ethic, absence of criminal history, and the unlikelihood that he would engage in further criminal activity).

**2. c. To protect the public from further crimes of the defendant**

The need to protect the public from the future crimes of the defendant is less of a concern here as Mr. Ortiz poses a low risk of recidivism based on his family support, employment history, and lack of criminal history. See U.S. Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12 (May 2004) (excerpt attached hereto as Exhibit 1). While the recidivism rate for all male offenders is 24.3%, Mr. Ortiz is categorized in Criminal History Category I, which reflects a lower 15.2% rate of recidivism. Id at 28. Mr. Ortiz's strong work ethic further reduces any potential to recidivate, as evidenced by a 12.7% recidivism rate for Category 1 offenders who are employed. Id. at 29.

For these reasons, a sentence of incarceration of 5 years or more is not necessary to ensure Mr. Ortiz does not recidivate. Courts routinely take the unlikelihood of a defendant's re-offending into account when fashioning sentences, as this Court should here. See, e.g. United States v. Hamilton, 2009 WL 995576, at *3 (2d Cir. Apr. 19, 2009) (holding that the district court abused its discretion in that not taking into account considerations with regard to age recidivism not included in Guidelines).

**2. d. To provide the defendant with needed educational and vocational training, medical care or other correctional treatment in the most effective manner**

Mr. Ortiz respectfully submits that this factor is applicable in his case with regards to education. Mr. Ortiz, should it be deemed necessary or in his best interest, is amenable to available educational services.

**3. The Kinds of Sentences Available**

A review of the potential Guidelines range within any variance or downward departure shows Mr. Ortiz in Zone D, with an advisory Guidelines range of 60 months due to the

statutorily authorized minimum sentence of five years being greater than the minimum of the guideline range (46 to 57 months) (level 23, criminal history category I). However, as previously discussed, in light of Mr. Ortiz's one criminal history point, substantial cooperation and other factors, the Court can determine what sentence is appropriate in Mr. Ortiz's case. The Court can impose a term of incarceration in combination with home detention, community service, supervised release, or all of these factors as a part of its sentence.

### 4-5. The Kinds of Sentence and the Guidelines Sentencing Range Established and any Pertinent Sentencing Commission Policy Statements

Although the impact of the guidelines on a court's sentencing discretion has been discussed in Section I and II (A), supra, the critical question in Mr. Ortiz's case is the exact weight this Court should give to the Guidelines. As recognized in Gall, district courts "may not presume that the Guidelines range is reasonable." 552 U/SI at 49; Rita, 551 U.S. at 351 ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."). Thus, mitigating circumstances and substantive policy arguments that were formerly irrelevant in all but the most unusual cases are now potentially relevant in every case. Accordingly, this Court can take into account a number of factors in determining Mr. Ortiz's sentence, including Mr. Ortiz's substantial assistance to date; the impact incarceration would have on Mr. Ortiz's common-law wife, children, and family who are financially dependent on Mr. Ortiz. These factors are ignored in the advisory Guidelines range. Such an omission is troublesome when one considers that the Guidelines in Mr. Ortiz's case become the baseline for his sentencing. That is, any sentence imposed on Mr. Ortiz is seen in the context of how it compares with the applicable Guideline range.

### 6. The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

Prior to the promulgation of the Guidelines, disparity in sentencing was common. Mistretta v. United Stales, 488 U.S. 361, 365 (1989). The Guidelines were designed, in part, to remedy this disparity. "Downward departure to equalize sentencing disparity is a proper ground for departure under the appropriate circumstances." United States v. Daas, 198 F.3d 1167. I 180-81 (9th Cir. 1999).

An appropriate resource to consider on the issue of sentencing disparity is the U.S. Sentencing Commission Preliminary Quarterly Data Report, 1st Quarter Release Through December 31, 2011, an excerpt of which is attached hereto as Exhibit 2. In this publication, sentences from around the country are compared and different variables noted. The need for a sentence of incarceration under the instant facts can be evaluated by comparing how similar cases have been treated in the circuit and nationally. Table 1 reveals that of all the sentences, 44.4% of imposed sentences are below Guidelines, with 17.5% of these below Guidelines sentences being for reasons other than cooperation with the government, and 26.9% were government sponsored. Table 2, page 7, indicates that 26.4% of sentences imposed in the Middle District of Florida are below Guidelines levels based on Booker, and 17.9% are below Guidelines as a result of substantial assistance, meaning over 44% of all sentences imposed in the Middle District of Florida are at below Guidelines levels. Moreover, as Table 5, page 13 indicates, less than half of all sentences imposed nationwide under the applicable Guideline, § 2D1.1, are sentenced in accordance with the Guidelines. These statistics demonstrate that courts nationwide are imposing sentences below the Guidelines, and the same should be done in Mr. Ortiz's case.

**7. The Need to Provide Restitution to Any Victims of the Offense**

As the PSR notes, restitution is not applicable in this case.

## CONCLUSION

The circumstances presented in Mr. Ortiz's case justify a departure from the statutory minimum sentence. Because the decision in Booker has made the Guidelines advisory and the parsimony clause of 18 U.S.C. § 3353 (a) the paramount consideration, undersigned counsel respectfully submits that a sentence below the applicable and advisory Guideline range is appropriate in Mr. Ortiz's case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of February, 2016, I electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic

filing to the following: Walter Furr, Assistant United States Attorney, walter.furr@usdoj.gov

                                    Respectfully submitted,

                                    */s/Ernesto L. Luna*_____
                                    Ernesto L. Luna, Esq.
                                    Florida Bar No. 0170224
                                    LUNA LAW OFFICE, LLC
                                    711 S. Howard Avenue, Suite 200
                                    Tampa, Florida 33606
                                    Tel.: (813) 489-6222
                                    Fax: (321) 984-5150
                                    Email: lunalaw@msn.com
                                    Attorney for Gregory Ortiz